IN THE MATTER OF OBJECTIONS TO THE REPORT OF COMMISSIONERS FOR THE DRAINAGE OF LANDS ALONG THE PEQUEST RIVER.

Under the act to provide for the drainage of lands, approved March 8th, 1871, (*Pamph. Laws, p.* 25,) only the lands described in the report of the managers of the geological survey, and in the notice of the application for the appointment of commissioners, are liable to assessment.

Argued at November Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED.

For the objectors, *E. C. Harris.*

*Contra, Vanatta,* Attorney-General.

The opinion of the court was delivered by

DIXON, J.   Commissioners for the drainage of a tract of land upon the Pequest river, in the counties of Warren and Sussex, having been heretofore appointed by this court, under the provisions of "An act to provide for the drainage of lands," approved March 8th, 1871, (*Pamph. Laws,* 1871, *p.* 25,) they have made report to us of certain of their proceedings, pursuant to the directions of a supplement approved March 19th, 1874, (*Pamph. Laws,* 1874, *p.* 43,) and to this report, Cummins O. Harris, William C. Hibler, Samuel H. Read, Jesse Willson, Abijah Willson, Samuel G. Park, Levi Kettle, Theodore F. Johnson, Isaac Stickle, George Wilson, John Gibbs, James N. Gibbs, Jacob Lundy, and Sarah Lundy, whose lands the commissioners have assessed, have presented objections, the validity of which is now to be determined.   The objectors urge that their lands are not included in the tract described by the report which the board of managers of the geological survey made to this court, as the basis of these proceedings, and by the notice which the court there-

upon ordered to be given, and that, consequently, they are not liable to assessment herein.

The matter of fact so urged appears to be true. Although some general expressions in the managers' report might, perhaps, embrace some of the lands of the objectors, yet a tracing of the boundaries set forth in that report, and a comparison of the map which accompanies it with a map of the objectors' land, show that they are all excluded from the tract originally considered.

This being so, I think the conclusion urged by the objectors properly follows. The first section of the act provides that, on the application of at least five owners of separate lots of land included in any tract subject to overflow, or marshy, the board of managers may examine such tract, and, if they shall deem it for the interest of the public and of the land-holders to be affected, they may make surveys and maps of any such tract, and adopt a system of drainage for the same, and shall report their surveys, maps, and plan of drainage to the Supreme Court, and thereupon the court, upon reasonable notice given and published, shall appoint three commissioners to superintend and carry out the drainage of the particular tract aforesaid ; provided that if, at the time fixed for the appointment of commissioners, it shall appear to the court, by a written remonstrance of the owners of a majority of the said low and wet lands, that they are opposed to the drainage thereof at the common expense, then the court shall not appoint commissioners. Of the notice thus required, this court has already decided that it " should generally describe the tract of land so that it may be reasonably identified as to its location and general boundaries, and also should give a general statement of the plan of drainage proposed, so that it may reasonably be understood, without requiring the land-owner to come to Trenton to examine the same, in order to have a general knowledge of it. These are important, that the land-owner may know that he is interested, and determine whether to remonstrate or not." *In the matter, &c., between Lower Chatham, &c.,* 6 *Vroom* 497.

It is therefore evidently the purpose of the statute that, by the description of the tract contained in the notice, those land-owners are to be notified, at whose common expense the proposed work is to be done, and no person not interested in land embraced in that tract has any notice that he is expected to contribute to such expense. This legislative requirement, that some persons, who are to be assessed for the cost of the work, shall be notified before the work is begun, indicates a legislative intent that others, whose rights are deserving of equal consideration, but to whom no notice is to be given, shall be exempt from assessment. Nor is a different design observable in any other portion of the act. The second section directs an assessment to be levied upon the lands and territory which, in the judgment of the commissioners, ought to contribute to the expense; and the supplement enacts that the assessment shall be imposed upon the lands benefited or intended to be benefited by the drainage. But both of these expressions must be limited by an implication which confines the judgment of the tribunal imposing the assessment, to that area over which the notice has given it jurisdiction. With such an implication, these expressions accord with the principles of justice; without it, they would violate those principles; and as they contain no words repugnant to the implication, there can be no hesitation as to the propriety of so construing them.

I conclude, therefore, that the lands of the objectors should be relieved from the assessment.